UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ANTHONY MURPHY,

                Plaintiff,                    Case No. 2:24-cv-6

v.                                     Honorable Robert J. Jonker

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

                Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about

which he complains occurred at that facility. Plaintiff sues the MDOC itself, AMF Food Service, and the following individuals: MDOC Director Heidi E. Washington, AMF Warden Unknown Hoffman, AMF Resident Unit Manager Unknown Nerkla, AMF Food Administrator Unknown Green, and AMF Food Staff Administration staff member Unknown Duran. Plaintiff names all individual Defendants in their official and personal capacities.

Plaintiff states that he is bringing suit on his own behalf, as well as on behalf of a list of inmates set forth in his complaint. (Compl., ECF No. 1, PageID.3–4.) Plaintiff alleges that on December 28, 2023, he received his lunch tray during chow time. (*Id.*, PageID.5.) The tray contained fish, potatoes and cheese, and string beans. (*Id.*) Plaintiff began to eat the potatoes and noticed what he believed to be the head of a rat inside the potatoes. (*Id.*) Plaintiff was shocked and "screamed at the top of his voice for help." (*Id.*) He also began to vomit. (*Id.*) Plaintiff contends he also found rat feces on the tray. (*Id.*)

Plaintiff tried to alert the other putative plaintiffs to not eat the food, but by the time Plaintiff had finished vomiting the other prisoners had already eaten. (*Id.*) Plaintiff claims that they too became sick and began vomiting and experiencing diarrhea and "prostration and typhoid fever." (*Id.*)

Plaintiff alleges further that Defendants Green, Duran, Hoffman, and Nerkla came to his cell later that day and "made it as if it was a funny joke," insinuating that Plaintiff and the other prisoners must "have pissed somebody off." (*Id.*, PageID.5–6.) Plaintiff alleges that they told him and the other prisoners to "try and forget that this ever happen[ed]," especially if they wanted to file grievances "because [you are] just not [going to] win." (*Id.*, PageID.6.) According to Plaintiff, he and the other inmates were told that "the next time ain't any of y'all [going] to make it." (*Id.*)

Based on the foregoing, Plaintiff asserts violations of his Eighth Amendment rights, as well as the other inmates' Eighth Amendment rights. (*Id.*, PageID.5.) The Court also construes Plaintiff's complaint to assert First Amendment retaliation claims. As relief, he seeks $100,000,000.00 in damages. (*Id.*, PageID.7.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Claims Brought on Others' Behalf

As noted *supra*, Plaintiff has included with his complaint a list of putative co-plaintiffs. Those individuals, however, have not signed the complaint. To the extent Plaintiff seeks to act on behalf of those prisoners, he may not do so. Federal law specifies that cases in the courts of the United States may be conducted only by the parties personally or through counsel. 28 U.S.C. § 1654. That statute provides that, "[i]n all courts of the United States the parties may plead and conduct *their own cases* personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." *Id.* (emphasis added). The statute clearly makes no provision for a *pro se* party to represent others. The federal courts have long held that § 1654 preserves a party's right to proceed *pro se*, but only with respect to his or her own claims. Only a licensed attorney may represent other persons. *See Rowland v. Calif. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–03 (1993); *United States v. 9.19 Acres of Land*, 416 F.2d 1244, 1245 (6th Cir. 1969). Plaintiff is not a licensed attorney, and as a layman, Plaintiff may only represent himself with respect to his individual claims and may not act on behalf of other prisoners. Accordingly, any claims brought on behalf of others will be dismissed.

### B.    Official Capacity Claims

As noted above, Plaintiff has named the individual Defendants (Washington, Hoffman, Nerkla, Green, and Duran) in their official and personal capacities. Although an action against a defendant in his or her individual capacity intends to impose liability on the specified individual,

4

an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks only damages. Official capacity defendants, however, are absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court, therefore, will dismiss Plaintiff's official capacity claims in their entirety.

C.     **Personal Capacity Claims**

1.     **Claims Against the MDOC and AMF Food Service**

As noted above, Plaintiff has named the MDOC itself, as well as AMF's Food Service

department, as Defendants in this matter. AMF and its individual departments, however, are not

separate entities capable of being sued under § 1983. As this Court noted in *Ryan v. Corizon Health*

*Care*, No. 1:13-cv-525, 2013 WL 5786934 (W.D. Mich. Oct. 28, 2013), "individual prisons named

as Defendants . . . (ICF, IBC, LRF and RGC) are buildings used by the MDOC to house prisoners.

They are not the proper public entity for suit" *Id*. at *7; *see also Watson v. Gill*, 40 F. App'x 88,

89 (6th Cir. 2002) ("The McCracken County Jail is not a legal entity susceptible to suit. . . [; i]t is

a department of the county. . . ."); *Caruthers v. Corr. Med. Serv., Inc.*, No. 1:10-cv-274, 2010 WL

1744881, at *1 (W.D. Mich. Apr. 27, 2010) ("The Duane Waters Hospital is not an entity capable

of being sued. Rather, it is a building owned by the Michigan Department of Corrections."); *Poole*

*v. Michigan Reformatory*, No. 09-CV-13093, 2009 WL 2960412, at *1 (E.D. Mich. Sept. 11. 2009)

("Plaintiff names the Michigan Reformatory, the Earnest C. Brooks Correctional Facility, and the

Macomb Correctional Facility as defendants in this action. Those entities, however, are institutions

operated by the MDOC and are not . . . legal entities subject to suit . . . .").

Moreover, § 1983 expressly requires that a named defendant be a "person." *See Monell v.*

*Dep't of Soc. Servs.*, 436 U.S. 658 (1978). However, neither the State of Michigan nor the MDOC

is a "person" within the meaning of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58

(1989) (holding a state is not a "person"); *Parker v. Mich. Dep't of Corr.*, 65 F. App'x 922, 923

(6th Cir. 2003) (citing *Will* and holding that the MDOC is not a "person."). Obviously, because

AMF and its departments are not entities separate from the MDOC, they are not "people" under

§ 1983 either. *See, e.g., Tinney v. Detroit Reentry Center*, No. 2:19-CV-10894-TGB, 2020 WL

4334964, at *2 (E.D. Mich. July 28, 2020) (stating "[a] state prison facility is not a person . . .

6

capable of being sued under § 1983"); *Ward v. Healthcare Clinic*, No. 16-10646, 2016 WL 3569562, at *1 (E.D. Mich. July 1, 2016) (same); *Poole*, 2009 WL 2960412, at *1 (same). Likewise, as discussed above, the MDOC is absolutely immune from a § 1983 suit.

Furthermore, to the extent Plaintiff named AMF Food Service in an attempt to hold all staff members within that department liable for the alleged violation of Plaintiff's Eighth Amendment rights, he has failed to state a claim for relief. "Summary reference to a single, [multi]-headed 'Defendants' does not support a reasonable inference that each Defendant is liable" for the events described in the amended complaint. *See Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011)) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))).

For all of the foregoing reasons, Plaintiff's claims against the MDOC and AMF Food Service will be dismissed.

### 2.    Claims Against Defendant Washington

Plaintiff has named MDOC Director Heidi Washington as a Defendant in this matter. Plaintiff, however, does not mention Defendant Washington anywhere in the body of his complaint.

As an initial matter, it is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that

demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Plaintiff fails to even mention Defendant Washington in the body of his complaint. His allegations fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). For that reason alone, Plaintiff's claims against Defendant Washington are subject to dismissal.

Moreover, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere

failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege any facts suggesting that Defendant Washington encouraged or condoned the conduct of her subordinates, or authorized, approved, or knowingly acquiesced in that conduct. Plaintiff's conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendant Washington was personally involved in the events described in Plaintiff's complaint.

For all of the foregoing reasons, Plaintiff's claims against Defendant Washington will be dismissed.

### 3.      Claims Against Defendants Hoffman, Nerkla, Green, and Duran

#### a.      First Amendment Retaliation Claims

As noted above, the Court has construed Plaintiff's complaint to assert First Amendment retaliation claims in light of his allegations concerning Defendants Hoffman, Nerkla, Green, and Duran's response to the December 28, 2023, incident regarding the food trays.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken.") Here, Plaintiff suggests that he orally complained about finding the rat's head and feces in his food to Defendants Hoffman, Nerkla, Green, and Duran. Plaintiff, therefore, has set forth sufficient facts for purposes of the first prong of a retaliation claim.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).

A specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g.*, *Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results). However, certain threats or deprivations are so *de minimis* that they do not rise to the level of constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542.

Plaintiff alleges that Defendants Hoffman, Nerkla, Green, and Duran treated the incident "as if it was a funny joke." (ECF No. 1, PageID.6.) He contends that they responded by telling Plaintiff and other inmates to forget about the incident and to not file grievances "because the next time [none of them were going to] make it." (*Id.*) Plaintiff, however, fails to attribute this statement to any specific Defendant. "Summary reference to a single, [multi]-headed 'Defendants' does not support a reasonable inference that each Defendant is liable" for the events described in the complaint. *See Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011)) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))).

In any event, these Defendants' response was vague and unaccompanied by any actual conduct. The Court concludes that such behavior would not deter a person of ordinary firmness from exercising his or her First Amendment rights. *See, e.g.*, *Hardy v. Adams*, No. 16-2055, 2018 WL 3559190, at *3 (6th Cir. Apr. 13, 2018) ("The alleged threat by Adams that she would make Hardy's life 'hell' is simply too vague to pass this threshold."); *Shisler v. Golladay*, No. 2:19-cv-80, 2019 WL 2590693, at *4 (W.D. Mich. June 25, 2019) (finding that Golladay's threat that the ticket would be the least of the plaintiff's worries was "simply too vague" to support a First Amendment retaliation claim); *Dahlstrom v. Butler*, No. 2:18-cv-101, 2019 WL 91999, at *11 (W.D. Mich. Jan. 3, 2019) ("Krause's threat[--to 'get' a prisoner who files a grievance on Krause and 'steps out of line'--] is too vague and non-specific to deter a person of ordinary firmness from engaging in protected conduct."); *Yates v. Rogers*, No. 2:18-cv-180, 2018 WL 6629366, at *7 (W.D. Mich. Dec. 19, 2018) ("Defendant's vague threat to 'get' Plaintiff does not carry the same seriousness . . . ."); *Johnson v. Govern*, No. 2:17-cv-125, 2018 WL 6321548, at *2 (W.D. Mich. Dec. 4, 2018) ("Govern's alleged threat to 'put a case' on Johnson . . . was too vague to constitute adverse action."); *Hunter v. Palmer*, No. 1:17-cv-109, 2017 WL 1276762, at *11 (W.D. Mich. Apr. 6, 2017) ("Defendant DeMaeyer told Plaintiff that complaining would get him into a lot of trouble . . . . Such a vague threat of unspecified harm falls short of adverse action."). Accordingly, any intended First Amendment retaliation claims against Defendants Hoffman, Nerkla, Green, and Duran will be dismissed.

### b.      Eighth Amendment

#### (i)      Food Tray Issue

Plaintiff's primary complaint is that his Eighth Amendment rights were violated when he found a rat's head and feces in his potatoes, which caused him to begin vomiting.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated

13

under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

The Eighth Amendment requires that prison officials ensure that "prisoners receive adequate . . . food." *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 832.) Here, Plaintiff alleges that he found a rat's head and feces in his potatoes. (ECF No. 1, PageID.5.) Plaintiff further avers that he immediately became sick after eating some of the potatoes. (*Id.*) Given these allegations, at this stage of the proceedings, the Court concludes that Plaintiff has sufficiently set forth facts to meet the objective prong of an Eighth Amendment claim.

Nevertheless, while the Court is sympathetic to Plaintiff's complaint, his Eighth Amendment claim fails on the subjective prong. Plaintiff alleges that after he and other inmates became sick from the food, Defendants Hoffman, Nerkla, Green, and Duran came to the housing unit and stopped by Plaintiff's cell. (*Id.*, PageID.5–6.) Plaintiff avers that they acted "as if it was a funny joke," stating that Plaintiff must have "pissed somebody off." (*Id.*, PageID.6.) According to Plaintiff, these individuals told Plaintiff and the other inmates to forget the incident, "[especially] if [they planned] on . . . filing all of these dumb ass [g]rievances against us because [you are] just not [going to] win." (*Id.*) Plaintiff also alleges that they said that "the next time [none of them were

14

going to] make it." (*Id.*) While the Court does not condone that sort of response to the incident, these comments fail to show that Defendants Hoffman, Nerkla, Green, and Duran were aware that the food trays were contaminated with the rat's head and feces *before* they were passed out to Plaintiff and the other inmates. Plaintiff's complaint is devoid of facts from which the Court could infer that these individuals were subjectively aware of the presence of the rat's head and feces and ignored that risk. Moreover, while Plaintiff takes issue with their response to the incident, as discussed *infra*, that response, to the extent it constitutes verbal harassment, fails to rise to the level of an Eighth Amendment violation.

For all of the foregoing reasons, Plaintiff's personal capacity Eighth Amendment claims against Defendants Hoffman, Nerkla, Green, and Duran premised upon the contaminated tray will be dismissed.

### (ii)  Verbal Harassment

In his complaint, Plaintiff also alleges that after he found the rat's head and feces in his potatoes, Defendants Hoffman, Nerkla, Green, and Duran came to his housing unit and "made it as if it was a funny joke," stating that Plaintiff and the other inmates must have "pissed somebody off." (ECF No. 1, PageID.6.) Plaintiff suggests that these individuals told him and the others to forget the incident and to not file grievances because "the next time ain't any of y'all [going to] make it." (*Id.*)

To the extent Plaintiff raises an Eighth Amendment claim premised upon these statements, he fails to state a claim for relief. While unprofessional, allegations of verbal harassment or threats by prison officials towards an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey*, 832 F.2d at 955. Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.*

Accordingly, any Eighth Amendment claims premised upon verbal harassment and idle threats will be dismissed.

### c.      Due Process

Plaintiff also vaguely references violations of his due process rights. The Court presumes that Plaintiff is referring to alleged violations of substantive due process under the Fourteenth Amendment.

"Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). Certainly, finding a rat's head and feces in food may qualify as conscience-shocking. However, as discussed *supra*, Plaintiff fails to allege any facts from which the Court could infer that any of the named Defendants were involved in and aware of the fact that the trays were contaminated before they were served to Plaintiff and other inmates in Plaintiff's housing unit. Plaintiff, therefore, has not set forth a plausible Fourteenth Amendment substantive due process claim.

Moreover, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*,

16

519 F. App'x 911, 923 (6th Cir. 2013). In this case, the Eighth Amendment applies to Plaintiff's claims for relief. Consequently, Plaintiff's substantive due process claims will be dismissed.

<u>**Conclusion**</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:    February 8, 2024               /s/ Robert J. Jonker
                                          Robert J. Jonker
                                          United States District Judge


17